# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| Plaintiff, : | |
| v. : | CRIMINAL NO. 06-345 (RMC) |
| LARRY A. VARNER : | |
| Defendant. : | |

## MEMORANDUM IN AID OF SENTENCING

Defendant Larry Varner, through counsel, respectfully submits the following Memorandum in aid of his sentencing.

1. On August 24, 2007, Larry Varner will come before this Court to be sentenced pursuant to his guilty plea to Theft from a Program Receiving Federal Funds, in violation of 18 U.S.C § 666. According to the Pre-Sentence Report (PSR) prepared by the United States Probation Office, Mr. Varner's Total Offense Level is 8 and his Criminal History Category is III[1] under the United States Sentencing Guidelines (U.S.S.G.). Mr. Varner's U.S.S.G. range is 6-12 (Zone B).[2]

2. In this Memorandum, due largely to Mr. Varner's more recent conduct, counsel for Mr. Varner argues that a non-custodial sentence is an appropriate resolution of this case.

---

[1] Mr. Varner falls in Criminal History Category III after having only one prior conviction because he receives a total of five criminal history points for issues related to that sole conviction.

[2] The Defense does not dispute the sentencing guideline calculations in the PSR.

1

**ARGUMENT**

I.   **THE POST-BOOKER SENTENCING FRAMEWORK.**

Under Justice Breyer's majority opinion in Booker, the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing. See 18 U.S.C. § 3553(a)(4)." United States v. Booker, 125 S.Ct. 738 (2005).  While holding that district courts should still consider the Guideline calculations and ranges for sentencing purposes, the remedial majority in Booker held that courts must consider all the purposes of sentencing set forth in 18 U.S.C. § 3553(a).  Pursuant to Booker, therefore, courts must treat the Guidelines as one, among several, sentencing factor.

Pursuant to 18 U.S.C. §§ 3562 and 3553(a) – which were explicitly endorsed by the Supreme Court in Booker – sentencing courts should consider the need for the sentence imposed:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances

of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged.

Pursuant to 18 U.S.C. § 3661, also expressly endorsed by the Booker majority:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Section 3582 of Title 18 states that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Taken together, the directives of Booker, as well as Sections 3553, 3661, and 3582 of Title 18, make it clear that sentencing courts may no longer consider the Guidelines alone in determining the appropriate sentence. After Booker, courts need not justify sentences outside the guideline range by citing factors that take the case outside the "heartland." Rather, as long as the sentence imposed is reasonable and supported by the factors outlined in Section 3553, courts may exercise their discretion in individual cases and impose sentences which are not within the proposed guideline range.

**II. A NON-CUSTODIAL SENTENCE IS THE MOST REASONABLE SENTENCE IN THIS CASE.**

**A. Background**.

Due to Mr. Varner's inexcusable conduct during the summer of 2005, he will be sentenced in this Court on August 24, 2007. Significantly, Mr. Varner has only one prior criminal conviction

in connection with a case which is more than twenty years old.[3] Mr. Varner has served his sentence for that conviction and he has been living in the community since 1993. With the exception of the instant offense, Mr. Varner has been living a productive, honest and law abiding life since his release nearly fifteen years ago.

Mr. Varner was born in the District of Columbia in 1958. PSR, ¶ 35. Mr. Varner was raised in the District of Columbia and he was one of six children living in a "very loving and close-knit household." PSR, ¶¶ 36 & 37. Although Mr. Varner's family was not able to have all that they wanted, the family was "provided with the basic necessities." PSR, ¶ 37. Mr. Varner attended public schools in Washington, D.C. and he managed to graduate from Anacostia Senior High School in 1977. PSR, ¶ 46.

With regard to Mr. Varner's social life while he was growing up, he was involved with Deborah Bennett throughout much of his youth. His relationship with Ms. Bennett began while Mr. Varner was in middle school and the relationship continued through highschool. During his senior year in highschool, Ms. Bennett gave birth to Mr. Varner's daughter.[4] After Mr. Varner graduated from highschool, he began living with Ms. Bennett and their daughter in a family-like environment.

Mr. Varner's life was going fairly well until the Fall of 1983 when two traumatic events occurred in his life. These two events were devastating to Mr. Varner and his life began to fall apart as a result of these events. The first event occurred in September of 1983 when Mr. Varner's father passed away due to cancer. The second event, which occurred only about one month after the

---

[3]In fact, this one prior conviction also constitutes Mr. Varner's only prior contact with the criminal justice system.

[4]Their daughter, Ebony Bennett, is Mr. Varner's only child.

passing of his father, involved an arrest Mr. Varner experienced in connection with a serious offense. As a result of this arrest, except for the instant case, Mr. Varner received the only conviction of his criminal history. While serving his sentence for this conviction, Mr. Varner did everything he could to get his life back on a positive track. Progress reports at the facility where Mr. Varner was incarcerated describe him as "an excellent worker [who was] not viewed as a management problem." PSR, ¶ 31. During his incarceration, Mr. Varner "participated and completed courses in Business Law, Business Math, Technical Writing and US Government." Id.. Mr. Varner attended Blinn College and Kaplan College while he was incarcerated. PSR, ¶ 46. Mr. Varner graduated from a paralegal program at Kaplan College in 1990 and "he received a Certificate of Completion from the Southern Career Institute as a Paralegal Entry Level" in 1991. Id..

Shortly after his release from custody, Mr. Varner was able to demonstrate that he was determined to live an honest and productive life. Only about one year after his release, Mr. Varner began his own paralegal business. PSR, ¶ 48. Mr. Varner's paralegal business is still in operation and it is the primary source of his current income. About three years after his release, Mr. Varner Married Sheila Payne. Ms. Payne is employed as a meeting planner in the District of Columbia and she and Mr. Varner live together in Maryland. Since his release, Mr. Varner has also successfully maintained contact with his daughter from a previous relationship.

While on bond in the instant case, Mr. Varner has continued to show his willingness to conduct himself properly. According to the Pretrial Services Agency, Mr. Varner is in full compliance with his weekly reporting requirements. PSR, ¶ 40. Additionally, Mr. Varner's May 8, 2007 urine sample indicates that he is refraining from illegal drug use. PSR, ¶ 45.

The instant case marks only the second time in Mr. Varner's life that he has had contact with

the criminal justice system. Mr. Varner has fully accepted responsibility for his conduct and he is extremely remorseful. Mr. Varner seriously regrets engaging in the conduct relating to the instant case and this experience has been a true awakening for him. Mr. Varner is determined to avoid any further contacts with the criminal justice system and he is confident that he will never engage in criminal behavior again.

**B.    18 U.S.C. § 3553(a) Factors**.

A non-custodial sentence will more than adequately reflect the seriousness of Mr. Varner's offense. See 18 U.S.C. § 3553(a)(2)(A). Mr. Varner's offense involved a single act of theft rather than a scheme involving repeated theft acts. Moreover, Mr. Varner accepted responsibility quickly in this case and he has agreed to pay full restitution by way of a money judgment soon after sentencing. Therefore, a non-custodial sentence will adequately reflect the seriousness of Mr. Varner's offense. For these same reasons, a non-custodial sentence is also consistent with promoting respect for the law and with providing just punishment for the offense. See 18 U.S.C. § 3553(a)(2)(A).

A non-custodial sentence will also provide ample deterrence for Mr. Varner and anyone else who may consider committing a similar crime. See 18 U.S.C. § 3553(a)(2)(B). Considering that this case has resulted in a conviction which will forever taint Mr. Varner's criminal history and that he must pay full restitution early, a non-custodial sentence in this case is punitive enough to provide sufficient deterrence. Further, because it is anticipated that Mr. Varner will be required to be on supervision for some specified period even if he is not sentenced to a period of incarceration, Mr. Varner's quality of life will be seriously disrupted and he faces the possibility of incarceration if he violates any condition of his supervision. The hassles and potential consequences associated with

supervision alone are enough to deter Mr. Varner or anyone else from committing this type of crime in the future.

When considering Mr. Varner's limited criminal history, his remorsefulness and his overall conduct over the past twenty years, it is clear that Mr. Varner will not commit any further crimes in the future. Therefore, a non-custodial sentence will adequately protect the community from any further crimes on the part of Mr. Varner. 18 U.S.C. § 3553(a)(2)(C).

Finally, when considering the nature and circumstances of the offense along with the history and characteristics of Mr. Varner,[5] a non-custodial sentence is warranted. Mr. Varner has only two contacts with the criminal justice system and he has lead a generally honest, respectable and productive life. Mr. Varner accepted responsibility soon in this case and he has agreed to quickly pay full restitution. Mr. Varner has been doing tremendously well in getting his life back on track since his first (and only other) arrest more than twenty years ago. Any sentence which will cause Mr. Varner to be incarcerated will be extremely disruptive to his growth and development and such a sentence will be a disservice to both him and the community. A sentence which allows Mr. Varner to remain in the community is also significant because it will allow him to continue working. By remaining in the community, Mr. Varner will be in a better position to make his full restitution payment and to provide for his family.

**C.    Conclusion**.

For the reasons discussed above, a sentence which involves a period of incarceration will be greater than necessary to satisfy the statutory purposes of sentencing. See 18 U.S.C. § 3553(a). Mr.

---

[5] See 18 U.S.C. § 3553(a)(1).

Varner submits that a sentence of probation is a just and fair resolution of this matter.[6]

---

[6]If the court feels that a sentence which is more punitive than probation alone is warranted, Mr. Varner suggests that the court consider a sentence of probation which includes a specific period of home confinement. The court could also consider requiring Mr. Varner to perform a considerable amount of community service.

Respectfully submitted,
A.J. Kramer
Federal Public Defender


_____/s/_____
Tony W. Miles
Assistant Federal Public Defenders
625 Indiana Avenue, N.W.
Washington, D.C. 20004
(202) 208-7500